IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: AMERICAN MEDICAL SYSTEMS, INC.,
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION          MDL No. 2325

---

THIS DOCUMENT RELATES TO:

*Cynthia Johnson v. American Medical Systems, Inc.*
Civil Action No. 2:14-cv-28447

## MEMORANDUM OPINION & ORDER

Pending before the court is defendant, American Medical Systems, Inc.'s, ("AMS") Motion to Dismiss with Prejudice. [ECF No. 7]. The plaintiff has responded. [ECF No. 9]. AMS has not filed a reply and the deadline to do so has expired. Thus, this matter is ripe for my review. For the reasons stated below, AMS's Motion is **DENIED**.

### I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are approximately 60,000 cases currently pending, approximately 4,000 of which are in the AMS MDL, MDL 2325. Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' discovery responsibilities.

Pretrial Order Number 222 ("PTO # 222") provides that 351 cases in this MDL, including this case, would be known as "AMS Wave 1 cases." *See* PTO # 222, No. 2:12-md-2325, entered Oct. 21, 2016 [ECF No. 3215]. Wave 1 plaintiffs were required to submit a Plaintiff Fact Sheet ("PFS") by November 21, 2016. *See* PTO # 222 at ¶ A. Here, the plaintiff failed to timely submit a completed PFS and AMS now moves for sanctions against the plaintiff for failure to comply with PTO # 222. Specifically, AMS seeks dismissal of the plaintiff's case with prejudice.

In the plaintiff's response, counsel for the firm McSweeney Langevin states that the firm represents 102 individual plaintiffs listed in PTO # 222, and indicates that this large volume made the firm unable to timely submit this plaintiff's PFS. Counsel indicates that as of February 3, 2017, it had or would soon submit the plaintiff's PFS. The plaintiff's counsel argues that dismissal with prejudice is too harsh of a sanction.

## II. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four *Wilson* factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to

produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to this case, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs containing thousands of individual cases, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32.

Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *Id.*

3

at 1232. A "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

## III. Discussion

Pursuant to PTO # 222, the plaintiff was required to submit a completed PFS by November 21, 2016. The purpose of the PFS, as was the case in *In re Phenylpropanolamine*, is "to give each defendant the specific information necessary to defend the case against it . . . [because] without this device, a defendant [is] unable to mount its defense because it [has] no information about the plaintiff or the plaintiff's injuries outside the allegations of the complaint." 460 F.3d at 1234. As of the date of AMS's Motion, the PFS was 67 days late.[1]

AMS asks the court to dismiss the plaintiff's case with prejudice, and the plaintiff argues that a lesser sanction or no sanction would be appropriate. Applying the *Wilson* factors to these facts, and bearing in mind the unique context of multidistrict litigation, I conclude that dismissal with prejudice is not justified.

The first factor, bad faith, is difficult to ascertain given that plaintiff's counsel asserts that they were working to submit a large number of PFSs on a rolling basis. However, counsel's missing a deadline due to representing a large number of

---

[1] I assume that the plaintiff has submitted her PFS, albeit late, because her response indicates that she has or would soon do so, and because AMS did not file a reply.

plaintiffs is not an excuse. As set forth in Pretrial Order Number 4 ("PTO # 4"), "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." *See* PTO # 4 ¶ C, No. 2:12-md-2325, entered Apr. 17, 2012 [ECF No. 147]. This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. Pretrial Order Number 19 ("PTO # 19")—which was jointly drafted by the leadership counsel of both parties—expressly states that failure to timely submit a PFS could result in sanctions. *See* PTO # 19 ¶ 2.d No. 2:12-md-2325, entered Oct. 4, 2012 [ECF No. 302]. The plaintiff nevertheless failed to comply. Although these failures do not appear to be callous, the fact that they were in full knowledge of the court's orders and discovery deadlines leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—leans toward the order of sanctions. Without a PFS, AMS is "unable to mount its defense because it [has] no information about the plaintiff or the plaintiff's injuries outside the allegations of the complaint." *In re Phenylpropanolamine*, 460 F.3d at 1234. Furthermore, because AMS has had to divert its attention away from timely plaintiffs and onto this case the delay has unfairly affected the progress of the remaining plaintiffs in MDL 2325.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. In addition, the court expects to have to evaluate and dispose of a significant number of motions similar to the one at bar, thereby directing its time and resources to noncompliant plaintiffs at the expense of other plaintiffs in this MDL. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

Application of the fourth factor—the effectiveness of less drastic sanctions—counsels against the relief sought by AMS. Rather than imposing the harsh sanction of dismissal, the circumstances of this case lead me to impose the sanction provided in Rule 37(b)(2)(C), which requires the disobeying party to pay "the reasonable expenses, including attorney's fees, caused by the [discovery] failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." The plaintiff's failure to comply with discovery is not substantially justified by the explanation that her counsel represents a large volume of clients. *See In re Engle Cases*, 767 F.3d 1082, 1087 (11th Cir. 2014) ("[A] lawyer's responsibilities to the court are not diluted even by an ocean of claims."). Furthermore, there are no circumstances that make this sanction unjust. Even if the discovery violation has

6

since been cured, it nevertheless resulted in litigation expenses for AMS. Applying Rule 37(b)(2)(C) ensures that the disobeying party, rather than the innocent party, bears those costs.

I find that $1,000 is a minimally representative valuation of AMS's expenses. This number accounts for the time and money AMS spent identifying the plaintiff as one of the non-compliant plaintiffs; assessing the effect of her discovery violations; drafting a motion for sanctions; and serving the motion. All knowledgeable MDL counsel would consider these efforts, which would have been avoided had the plaintiff followed the court's order, to be worth $1,000, at the least. Accordingly, AMS's Motion is **DENIED** in that AMS seeks dismissal of the plaintiff's case. However, I instead award payment of expenses pursuant to Rule 37(b)(2)(C).

IV. Conclusion

For the reasons stated above, the court **ORDERS** that AMS's Motion to Dismiss with Prejudice [ECF No. 7] is **DENIED.** The court further **ORDERS** that the plaintiff has **until July 13, 2017** to pay AMS **$1,000** as minimal partial compensation for the reasonable expenses caused by the plaintiff's failure to comply with discovery. In the event that the plaintiff does not provide adequate or timely payment, I will consider ordering a show-cause hearing in Charleston, West Virginia, upon motion by the defendants.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 15, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE